UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JACOB R.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-678 TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

This case is before a U.S. District Court for the second time. On June 8, 2015, Administrative Law Judge ("ALJ") Riley Atkins issued a decision finding plaintiff not disabled. *See* AR 18–29. Plaintiff sought review in the U.S. District Court for the District of Oregon, and District Judge Michael Mosman entered an order adopting the Findings and Recommendation of Magistrate Judge Patricia Sullivan, reversing and remanding plaintiff's claim for further administrative proceedings. *See* AR 629–54. On January 10, 2019, ALJ Cynthia Rosa, issued a new decision again finding plaintiff not disabled. *See* AR 557–72. Plaintiff seeks review of the January 2019 decision.

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS - 1

## I. ISSUES FOR REVIEW

A. Did the ALJ harmfully err in rejecting plaintiff's symptom testimony?

B. Did the ALJ harmfully err in rejecting the opinions of Scott Alvord, Psy.D.?

C. Did the ALJ harmfully err in rejecting the lay testimony of Mark Kennedy?

D. Did the ALJ harmfully err in assessing plaintiff's residual functional capacity ("RFC")?

## II. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 416.920. The ALJ assesses the claimant's residual functional capacity to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, to determine, at step five, whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.920(e).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 2

considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009) (citations omitted).

### A. The ALJ Did Not Harmfully Err in Rejecting Plaintiff's Testimony

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Plaintiff testified he is unable to work full-time because he has trouble with social interactions and maintaining relationships. AR 40, 288, 293, 591. He testified he does not do well taking direction from supervisors and coworkers. *See* AR 44, 293, 593. He testified he has obsessive compulsive disorder ("OCD"), which forces him to repeat activities throughout the day. *See* AR 45–47, 288. He testified he took Zoloft to treat his depression and OCD but stopped because it was making him nauseous. AR 49. Plaintiff testified he has no problem handling his own hygiene at this point. *See* AR 53–55. He

testified he will "forget things if it includes a lot of steps." AR 293. He testified he has anxiety and works too slowly to keep a job. *See* AR 591.

The ALJ found plaintiff's medically determinable impairments could cause the symptoms he alleged. *See* AR 564. But the ALJ found plaintiff's statements regarding the severity of his mental health symptoms were not fully consistent with the medical and other evidence in the record. *Id.* The ALJ gave several reasons for this determination. *See* AR 564–66. First, the ALJ reasoned plaintiff's testimony was inconsistent with the medical record. *See* AR 564–65. Second, the ALJ determined plaintiff's testimony was inconsistent with his receipt of conservative treatment, to which he responded well. *See* AR 565. Third, the ALJ determined plaintiff's testimony was inconsistent with his activities of daily living. *See* AR 565–66.

### 1. The ALJ Erred in Rejecting Plaintiff's Testimony as Inconsistent with the Medical Record

The ALJ erred in rejecting plaintiff's testimony based on the finding that he was typically cooperative on examination. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the claimant's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

The ALJ unreasonably interpreted the evidence in rejecting plaintiff's claims of social limitations based on the finding that he was cooperative at his medical appointments. That a claimant manages to be cooperative with his healthcare providers does not contradict his claims that he struggles to interact with coworkers, supervisors, or the general public. Plaintiff's healthcare providers are professionals trained to deal with mentally and physically ill or disabled patients. Furthermore, a medical treatment relationship is not like the relationship a worker has with his coworkers, supervisors, or the general public. The goals and nature of interacting with healthcare providers is different. The Social Security Administration's regulation concerning evidence of functioning in supportive situations is instructive here: "Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016). Interactions with treatment providers are likely to be "less demanding or more supportive than typical work settings" and thus do not demonstrate an ability to work with coworkers, supervisors, or the general public in a work setting. *Id.*

The ALJ discussed several other findings from the medical record, such as that plaintiff generally presented with appropriate hygiene, and demonstrated cognitive ability in the low-average range. *See* AR 564–65. But the ALJ erred in relying on these findings to discount plaintiff's overall testimony because he failed to link them to any of plaintiff's actual testimony. *See Dodrill*, 12 F.3d at 918. Plaintiff did not testify he had poor hygiene or cognitive ability below what the ALJ ultimately determined. Plaintiff did

testify that he worked too slowly to keep up with his employer's expectations regarding pace, but attributed this to his OCD and anxiety. *See* AR 45–47, 288, 591. The ALJ thus erred in rejecting plaintiff's testimony as inconsistent with the medical record.

### 2. The ALJ Did Not Err in Rejecting Plaintiff's Testimony as Inconsistent with His Level of and Response to Treatment

The ALJ did not err in rejecting plaintiff's testimony based on his receipt of and response to conservative treatment. An ALJ may reject a claimant's testimony when the severity of symptoms alleged is inconsistent with the level or frequency of treatment, or where plaintiff's symptoms are well-controlled with treatment and medication. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *7 (July 2, 1996));[1] *Warre ex rel. E.T. IV V. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). Plaintiff reported he was off medication for several years due to insurance issues, but he and his foster father felt okay waiting before restarting anything because plaintiff was doing well. AR 477. As the Oregon District Court previously found, the ALJ reasonably relied on plaintiff's own reports of doing well without medication in rejecting plaintiff's testimony. *See* AR 643.

### 3. The ALJ Did Not Err in Rejecting Plaintiff's Testimony as Inconsistent with Plaintiff's Activities of Daily Living

The ALJ reasonably rejected plaintiff's testimony regarding the severity of his social limitations based on his general social interactions. An ALJ may reject a plaintiff's symptom testimony when it is inconsistent with his daily activities. *See Orn v. Astrue*,

---

[1] SSR 96–7p has been superseded by SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16–3p nonetheless retains language providing that an ALJ may discount a claimant's testimony "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints." *Id.* at *9.

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 6

495 F.3d 625, 639 (9th Cir. 2007). The ALJ determined plaintiff could tolerate occasional, superficial contact with coworkers, without teamwork, because he had friends and maintained romantic relationships. See AR 319, 428, 449, 476. Plaintiff participated in social activities, such as performing a standup comic routine in high school that was well-received. AR 535. Although these activities would not support a finding that plaintiff had no social limitations, they do support the ALJ's determination that plaintiff could tolerate some limited workplace interaction, as reflected in the RFC. The ALJ therefore did not err in rejecting plaintiff's testimony regarding the severity of his social limitations as inconsistent with his daily activities.

### 4. The ALJ's Errors Were Harmless

The ALJ's analysis of plaintiff's testimony was not free from error, but the errors he committed were ultimately harmless. An error is harmless "where it is 'inconsequential to the ultimate disability determination.'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162). The ALJ gave at least two valid reasons for rejecting plaintiff's testimony—that it was inconsistent with plaintiff's level of and response to treatment, and inconsistent with his daily activities—so his errors in rejecting plaintiff's testimony based on alleged inconsistencies with the medical record were inconsequential to the outcome, and therefore harmless.

### B. The ALJ Did Not Harmfully Err in Rejecting Dr. Alvord's Opinions

Dr. Alvord examined plaintiff on January 15, 2013. AR 451–56. Dr. Alvord conducted a clinical interview, reviewed medical records, performed a mental status exam, and administered several psychological tests. *See id.* Dr. Alvord opined plaintiff demonstrated limited judgment, but also opined plaintiff was capable of continuing to

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 7

1  manage his own money. AR 449. He opined plaintiff's insight into his condition was

2  mildly impaired. AR 451. He opined plaintiff's intellectual ability was in the borderline

3  range. *Id.* Dr. Alvord opined plaintiff's adaptive abilities fell "in the moderate range of

4  impairment." AR 454.

5        The ALJ gave Dr. Alvord's opinions little weight. AR 567. The ALJ reasoned

6  plaintiff's appearance at Dr. Alvord's exam was different than his presentation at other

7  exams throughout the record. *Id.* The ALJ noted Dr. Alvord's opinions were flawed

8  because, according to the ALJ, he mistakenly concluded plaintiff had been abused. *Id.*

9  But the ALJ stated it was "unclear to what extend Dr. Alvord relied on this mistaken

10 assumption in formulating his opinion." *Id.* The ALJ last noted Dr. Alvord's opinions were

11 internally inconsistent, as he found plaintiff had limited judgment, but concluded plaintiff

12 was able to manage his own finances. *Id.*

13       An ALJ may reasonably reject a doctor's opinions when they are inconsistent

14 with or contradicted by the medical evidence.  *See Batson v. Comm'r of Soc. Sec.*

15 *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ did not harmfully err in rejecting

16 Dr. Alvord's opinion; the ALJ reasoned that this opinion was from an atypical

17 examination -- inconsistent with plaintiff's presentation at his medical appointments

18 throughout the record. The ALJ noted plaintiff's IQ score was six to eight points lower

19 during Dr. Alvord's exam than it was at other times, with no explanation for any

20 worsening. *See* AR 212, 451, 526.

21       The ALJ stated that plaintiff presented with normal appearance and at least

22 adequate grooming for most of his medical appointments, before and after Dr. Alvord's

23 examination. *See* AR 459–61, 477, 540, 552, 568. Dr. Alvord reported plaintiff "was

24

25

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 8

noted to present as quite disheveled and somewhat malodorous" at his examination. AR 449.

Each of these facts supports the ALJ's determination that plaintiff presented differently to Dr. Alvord than he did to other providers, and the ALJ reasonably rejected Dr. Alvord's opinions for being based on that atypical examination. Any error in the other portions of the ALJ's analysis of Dr. Alvord's opinion was harmless. *See Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162). Whether the ALJ adequately explained his rejection of Dr. Alvord's opinion based on Dr. Alvord's assumption that plaintiff was abused, for example, is inconsequential to the outcome given the ALJ's finding that Dr. Alvord's opinions were based on plaintiff's atypical presentation. The ALJ therefore did not harmfully err in rejecting Dr. Alvord's opinions.

### C. The ALJ Did Not Harmfully Err in Rejecting Mr. Kennedy's Lay Testimony

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ is not required to cite the specific supporting documents as long as "arguably germane reasons" for dismissing the testimony are noted; and, the ALJ is not required to "clearly link his determination to those reasons." *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Mr. Kennedy, plaintiff's foster father, testified at the 2015 hearing and submitted written statements on plaintiff's behalf. *See* AR 71–92, 296–303, 341. Mr. Kennedy testified plaintiff struggles with social interaction, often saying the wrong things at the

wrong time. *See* AR 72–73; 296, 341. He testified plaintiff had frequent interactions with the police. *See* AR 73–75.

Mr. Kennedy testified plaintiff was fired from a fast food job because he could not focus for more than a few seconds at a time and had problems with interpersonal relationships. AR 82. Mr. Kennedy testified plaintiff struggles to complete tasks such as filling out specific information on a medical form. *See* AR 84–85. He testified plaintiff does not have good hygiene and needs reminders to shower. AR 85–86.

The ALJ gave Mr. Kennedy's statements little weight. AR 568. The ALJ reasoned Mr. Kennedy's statements regarding plaintiff's social limitations were inconsistent with plaintiff's activities of daily living, such as plaintiff's reports that he had friends and maintained romantic relationships. *Id.* The ALJ reasoned Mr. Kennedy's statements regarding plaintiff's ability to focus were inconsistent with medical records indicating plaintiff was doing well without medication. *Id.* And the ALJ reasoned Mr. Kennedy's statements regarding plaintiff's grooming were inconsistent with medical records showing plaintiff maintained adequate grooming. *Id.*

The ALJ reasonably rejected Mr. Kennedy's statements regarding plaintiff's social limitations and ability to maintain focus based on records indicating plaintiff was doing well without medication. This analysis mirrored the ALJ's analysis with respect to plaintiff's testimony, and withstands this Court's review for the same reasons. *See supra* Part II.A.2.

The ALJ reasonably rejected Mr. Kennedy's statements that plaintiff could not maintain adequate hygiene as inconsistent with the medical record. This analysis mirrored the ALJ's analysis of Dr. Alvord's opinions about plaintiff's grooming, and the

Court upholds the ALJ's analysis on this point for the same reasons. *See supra* Part II.B. The ALJ therefore did not harmfully err in rejecting Mr. Kennedy's lay witness statements.

### D. The ALJ Did Not Harmfully Err in Assessing Plaintiff's RFC

Plaintiff contends the ALJ harmfully erred in assessing plaintiff's RFC because the ALJ failed to account for all limitations shown by the evidence. Pl. Op. Br. (Dkt. # 10), pp. 10–12. Plaintiff's argument depends on the Court finding in his favor on his earlier arguments -- he points to the evidence discussed above to show unaddressed limitations. *See id.* Because the Court has found the ALJ did not err in rejecting the evidence to which plaintiff refers, plaintiff has failed to show the ALJ harmfully erred in assessing his RFC. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding the party challenging an administrative decision bears the burden of proving harmful error).

### III. CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 30th day of September, 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge